UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICK MCLELLAN,<br><br>　　　　　　Plaintiff,<br>v.<br><br>CHRIS PERRY, in his individual capacity; and in his official capacity as Director of the Department of Public Safety; JAROLD HAFEN, in his individual capacity; TONY ALMARAZ,<br><br>　　　　　　Defendants. | Case No. 3:12-cv-00391-MMD-WGC<br><br>ORDER<br><br>(Def.'s Motion for Summary Judgment – dkt. no. 44) |

I. **SUMMARY**

Before the Court is Defendants Chris Perry, Jarold Hafen, and Tony Almaraz's Motion for Summary Judgment. (Dkt. no. 44.) For the reasons discussed below, the motion is granted.

II. **BACKGROUND**

This is a § 1983 case arising from the termination of Plaintiff Rick McLellan's ("McLellan") employment with the Nevada Highway Patrol ("NHP"). McLellan was employed as a Trooper II with the NHP. During all relevant times McLellan was also the President of the Nevada Department of Public Safety Officer's Association ("NDPSA"). Defendant Tony Almaraz, Chief of the NHP, terminated McLellan's employment for false statements McLellan made in a dispute resolution meeting and then repeated in

subsequent meetings, including an official investigation conducted by the Office of Professional Responsibility ("OPR"). Defendants Chris Perry and Jarold Hafen sustained Almaraz's decision to terminate McLellan's employment.

Following his termination, McLellan filed a whistleblower complaint and pursued an administrative appeal of his termination. At his post-termination hearing, McLellan argued that the false statements were made in his capacity as NDPSA President and the investigation opened into those statements — in which McLellan subsequently repeated false statements — was in retaliation for McLellan's allegations of improper conduct made against his superior officer. The Hearing Officer determined that McLellan's whistleblower complaint had no merit and that although McLellan may have been acting in the capacity of NDPSA's President at the time of the original false statements and its first repetition, he was acting in the capacity of an employee at the time he repeated the false statements to the OPR investigators.

McLellan had an opportunity to appeal the Hearing Officer's decision to state district court under NRS 233B.135, but instead filed this action under 42 U.S.C. § 1983. McLellan alleges that his termination violated his First Amendment free speech rights. Defendants now move for summary judgment.

## III. DISCUSSION

### A. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

**B.    Analysis**

Defendants argue that they are entitled to judgment as a matter of law for three reasons. First, Defendants assert that McLellan's claims are precluded by the adverse determination of the Hearing Officer and McLellan's failure to appeal that decision to the state court. Second, Defendants argue that McLellan cannot show his termination deprived him of his First Amendment rights. Finally, Defendants aver that their actions

are covered by qualified immunity. The Court agrees that McLellan's claims are precluded, and consequently, does not reach Defendants' other arguments.

### a. McLellan's Claims are Precluded by the Agency Action.

Under 28 U.S.C. § 1738, federal courts give the same preclusive effect to state court decisions as those decisions would be given in the state in which they were rendered. *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Additionally, "[a]s a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983." *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) (*citing Univ. of Tenn. v. Elliot*, 478 U.S. 788, 797-99 (1986)). These federal common law rules "extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in [*United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)]." *Guild Wineries and Distilleries v. Whitehall Co., Ltd.*, 853 F.2d 755, 758 (9th Cir. 1988).

Accordingly, in determining whether a state agency decision has a preclusive effect in federal court, "[t]he threshold inquiry . . . is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment." *Miller*, 39 F.3d at 1033. At a minimum, the agency decision must "meet[ ] the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decision[ ]." *Id.* Further, the state agency must have acted "within a judicial capacity and resolved disputed issues of fact properly before it," and the parties must have had an adequate opportunity to litigate the issues. *Utah Construction*, 384 U.S. at 422. In assessing the adequacy of the state agency's safeguards, courts have considered a party's ability to present evidence and oral argument, subpoena, call, or cross-examine witnesses, be represented by counsel, and seek judicial review of the decision. *See North Pacifica, LLC. V. City of Pacifica*, 366 F. Supp. 2d 927, 932 (N.D. Cal. 2005); *Embury v. King*, 191 F. Supp. 2d 1071, 1083-84 (N.D. Cal. 2001). Where procedural safeguards are sufficient, "federal courts must give the state agency's fact-

finding and legal determinations the same preclusive effect to which it would be entitled to in that state's courts." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999).

Under Nevada law, agency determinations are entitled to preclusive effect provided all the elements of *res judicata* are met. *Britton v. City of North Las Vegas*, 799 P.2d 568, 569-70 (Nev. 1990). Those elements are: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the action in question; (2) whether there was a final judgment on the merits; and (3) whether the party against whom the judgment is asserted was a party, or in privity with a party[,] to the prior adjudication." *Id.* at 570.[1] Issues are identical when "the facts essential to the maintenance of both suits are identical." *Round Hill Gen. Improvement Dist. v. B-Neva, Inc.*, 606 P.2d 176, 178 (Nev. 1980).

The Court finds that the *res judicata* elements are satisfied in this case. First, the issue presented in this litigation — whether McLellan was fired for dishonest statements he made in his capacity as president of the NDPSA — was the same issue decided by the Hearing Officer in the administrative proceeding. Even though McLellan's § 1983 claim is framed in constitutional terms, the facts essential to the maintenance of the claim are identical to those underlying McLellan's administrative case. Second, the Hearing Officer issued a final written decision on the merits of McLellan's claim. Third, McLellen was a party to the administrative action and is presently the party against whom that judgment is asserted. Thus, the Hearing Officer's decision would be given a preclusive effect by a Nevada court.

Additionally, the Court finds the requirements of *Utah Construction* are satisfied. First, the Nevada Department of Public Safety was acting in a judicial capacity when it

---

[1] The Nevada Supreme Court has left open the question of whether certain public policy considerations — such as employment discrimination — would eliminate an agency decision's preclusive effect, *see id.* at 569. However, wrongful termination determinations, where there are no allegations of discrimination (as that term is commonly used in Title VII litigation) do not fall within that potential public policy exception. *Roberts v. Las Vegas Valley Water Dist.*, 849 F. Supp. 1393, 1399 (D. Nev. 1994).

dismissed McLellan's whistleblower claims and upheld his termination. Second, the circumstances surrounding, and the reasons for, McLellan's termination were properly before the Hearing Officer. Finally, both parties had a full and fair opportunity to argue their version of the facts. The record supports that the parties were represented by counsel, called witnesses, presented documentary evidence, and submitted written closing arguments. (Dkt. no. 49, Ex. 10.) The Hearing Officer issued written findings and conclusions based on competent and relevant evidence introduced at the hearing, and McLellan had a right to judicial review of the Hearing Officer's decision. (*Id.*) Thus, the state administrative proceeding was conducted with sufficient procedural safeguards to equate it with state court judgment, and this Court must give it preclusive effect.

McLellan presents two main arguments opposing preclusion. First, citing *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1413 (10th Cir. 1997), McLellan argues that a preclusive effect should only be applied to a state court's affirmation of the agency decision as an agency has no jurisdiction over a § 1983 claim. In *Strickland*, the Tenth Circuit held that a state court's review of an agency decision precluded a plaintiff's § 1983 claim, which he subsequently brought in federal court, because the § 1983 claim could have been raised in the state court proceedings. *Id.* The Tenth Circuit then went on to state that the "[p]laintiff had a choice of pursuing these claims in state court, where the court could exercise conquering jurisdiction over the § 1983 claims, or in federal court, where the court could exercise supplemental jurisdiction over the state law claims. Once the plaintiff chose to seek judicial relief in state court, the interest of the City and of society in bringing litigation to a close weighed heavily in favor of requiring him to assert all available claims relating to his termination in a single action." *Id.* Based on this statement, McLellan argues that because he chose to forego an appeal to the state court, no adjudicatory body has or could have exercised jurisdiction over his § 1983 claim, and consequently, the claim is not barred by *res judicata*.

The main holding of *Strickland* — that preclusion cannot be obfuscated by simply choosing not to raise a § 1983 claim in state court proceedings — is uncontroversial, and

similar holdings are found within the Ninth Circuit. *See, e.g.*, *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). However, the rule McLellan extrapolates from the case directly contradicts Ninth Circuit precedent. *See, e.g.*, *Miller*, 39 F.3d at 1033 (finding that the state agency's adverse decision barred a § 1983 action in federal court even where the former employee failed to seek judicial review of the agency's decision in state court).

Moreover, McLellan's argument is based on a misunderstanding of the facts and claims in *Strickland*. In *Strickland*, the plaintiff, a state employee, was terminated for failing a drug test. 130 F.3d at 1409. At the post-termination hearing, the plaintiff argued that the agency had not complied with its own policies and procedures in administering the test, the test yielded a false positive, and consequently, the state lacked just cause for termination. *Id.* at 1410. However, the plaintiff's § 1983 claim was based on a violation of his Fourth Amendment rights to be free from unlawful search and seizure by administration of a drug test without reasonable suspicion. *Id.* Therefore, although factually related, the plaintiffs § 1983 claim was based on an independent right and distinct facts were necessary to its maintenance. In other words, even if the agency's actions comported with its own policies and procedures, the test was accurate, and the agency had just cause to terminate the plaintiff, administering the test may nonetheless have violated the plaintiff's Fourth Amendment rights. In this manner, the *Strickland* plaintiff's § 1983 claim was independent of his wrongful termination contentions. The claim would not have been precluded by the agency determination as it was truly a separate claim that had not been litigated before the agency. Thus, the plaintiff had the choice to combine the separate, constitutional claim with his appeal of the agency termination proceedings or to bring the claim in federal court as a true collateral attack of the agency decision. However, having chosen to pursue the appeal in state court where the § 1983 claim could have been raised, plaintiff was precluded from subsequent litigation of that claim in federal court. *See id.* at 1413.

///

Contrarily, in *Miller*, the plaintiff's § 1983 claim was simply a restatement of his wrongful termination contentions in constitutional terms. 39 F.3d at 1034. Although technically a different cause of action, the *Miller* court determined that the plaintiff's wrongful termination claim and § 1983 claim were the same because both were based on the primary right of continued employment. *Id.* at 1034-35. Although the plaintiff had not sought review of the administrative decision in state court, the Ninth Circuit concluded that the agency determination would be given preclusive effect in state court, and the claim was therefore barred from being re-litigated in federal court. *Id.*

Similarly, in *Olson*, the Ninth Circuit rejected the argument that a § 1983 claim for infringement on free exercise rights was different from a state administrative claim seeking reinstatement of a professional license. 188 F.3d at 1085-86. In *Olson*, the state board of psychological examiners revoked the license of a psychologist who performed an exorcism on a client. *Id.* at 1085. Despite the fact that the plaintiff-psychologist did not seek review of the board's decision claim in state court, the Ninth Circuit reasoned that the plaintiff's § 1983 claim was barred because the agency determination was a final decision and entitled to claim preclusion by state courts. *Id.* at 1086-87. Thus, where a § 1983 claim is simply a restatement of an administrative claim couched in constitutional terms that has been adequately litigated at the agency level, the claim is precluded from further litigation in federal court. *See id.*

Consequently, McLellan's contention that the unreviewed determination of the Hearing Officer cannot have a preclusive effect is contrary to established law. Like *Miller* and *Olson*, McLellan's § 1983 claim is simply his administrative claim framed in constitutional terms as both claims are based on the same primary right to continued employment and identical facts underpin their maintenance. Consequently, the claim was litigated at the agency and became final when McLellan chose not to appeal to the state district court. Because Nevada courts would give the Hearing Officer's decision preclusive effect, this Court must do the same.

///

Second, McLellan argues that the administrative proceedings did not provide an adequate opportunity to litigate the matter because the Hearing Officer's decision was based on a substantial evidence standard of review, but a § 1983 claim in federal court would require a preponderance of evidence standard. Citing *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006), McLellan argues that the shifting burden of persuasion between the administrative hearing and the federal standard defeats preclusion of his claim.[2]

However, McLellan misinterprets *Dias*. In *Dias*, two university police officers were terminated for falsifying their time sheets. *Id.* at 1127. Under a substantial evidence standard, a hearing officer determined that the officers entered false times on their time sheets, and there was no evidence of retaliation or disparate treatment. *Id.* at 1128. The federal district court then held that those *issues* were precluded, and granted summary judgment in favor of the university on some of the officers' claims including those for intentional infliction of emotional distress, negligence, negligent supervision, and retaliation. *Id.* The remaining claims were dismissed under a theory of qualified immunity. *Id.* The Ninth Circuit reversed the preclusion determination because, under an *issue preclusion* analysis, litigation of facts at a lower burden of persuasion cannot establish those same facts in the subsequent litigation of different claims subject to a higher burden. *See id.* at 1129-30.

In doing so, the Ninth Circuit expressly noted that although issue preclusion can be defeated by shifting burdens, *claim preclusion* is not subject to the same defense. *Id.* at 1129. Rather, "[c]laim preclusion is not affected by shifts or changes in the burden of persuasion so long as successive proceedings in fact involve the same claim." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure

---

[2]McLellan also argues that under *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 1801-03 (1984), determinations of "just cause" are not entitled to a preclusive effect. However, *McDonald* is inapplicable as the Supreme Court was discussing the decisions of arbitrators whose decisions are not subject to the full faith and credit congressional mandate of § 1738. *See id.* at 1801.

§ 4422 n.1 (2d ed. 2002). Unlike *Dias*, Defendants do not argue for issue preclusion, i.e. that facts of a separate claim are established by the Hearing Officer's decision. Rather, Defendants argue for claim preclusion, i.e. that McLellan's claim was litigated before the Hearing Officer, and the Hearing Officer's decision bars re-litigation of that same claim. Thus, *Dias* is inapplicable to the facts here.

Accordingly, having determined that a Nevada court would give preclusive effect to the Hearing Officer's decision, McLellan's § 1983 claim is barred, and summary judgment must be granted.

## IV. CONCLUSION

It is therefore ordered that Defendants Chris Perry, Jarold Hafen, and Tony Almaraz's Motion for Summary Judgment (dkt. no. 44.) is granted. The Clerk of the Court is instructed to enter judgment in favor of Defendants and to close the case.

DATED THIS 27th day of March 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE