# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICK MCLELLAN,<br><br>Plaintiff,<br>v.<br><br>CHRIS PERRY, in his individual capacity;<br>JAROLD HAFEN, in his individual capacity;<br>TONY ALMAREZ, in his individual capacity,<br><br>Defendants. | Case No. 3:12-cv-00391-MMD-WGC<br><br>ORDER |

**I.  SUMMARY**

Before the Court are two motions: (1) Defendants Chris Perry, Tony Almaraz, and Jerald[1] Hafen's ("Defendants") Motion for Summary Judgment (ECF No. 85) and (2) Plaintiff Rick McLellan's Motion for Partial Summary Judgment (ECF No. 98). The Court has reviewed the parties' responses (ECF Nos. 97, 106) and replies (ECF Nos. 101, 118). For the reasons discussed below, the Court denies both motions.

**II.  BACKGROUND**

Plaintiff filed this First Amendment retaliation action after he was terminated from his job as a Trooper II with the Nevada Department of Public Safety ("Department"). Defendants contend that Plaintiff was terminated for making false statements (ECF No. 85 at 11), while Plaintiff counters that his statements were materially true and, in any event, protected by the First Amendment (ECF No. 97 at 11). The statements at issue contained

---

[1]The Court spells Defendant Hafen's first name as it appears in Defendants' Motion for Summary Judgment.

two main assertions: that the Department had never received a complaint about over-enforcement from a company called Granite Construction and that Plaintiff had learned this fact from two high-level Granite Construction employees, Rod Cooper and Steve Clark. (*See* ECF No. 85 at 8-10; ECF No. 97 at 6.) Plaintiff eventually recanted in part, revealing that he learned there was no complaint from a secretary at Granite Construction, not Cooper or Clark. (ECF No. 85 at 10; *see also* ECF No. 97 at 7.) Plaintiff stands by the truth of his statement that the Department never received a complaint about over-enforcement. (ECF No. 97 at 7.)

The parties' dispute originates with citations that Plaintiff and his fellow officer, John Protain, issued to trucks affiliated with Granite Construction in August 2009. Plaintiff and Protain stopped several of these trucks over the course of a few days. (*See* ECF No. 85 at 2-3; ECF No. 97 at 2.) At least one Granite Construction employee, Bud Odell, became concerned that the Department was targeting Granite Construction for enforcement because of a recent union strike by the Teamsters. (*See* ECF No. 85 at 4, 8-9.) Odell believed that the Teamsters were affiliated with the Nevada Department of Public Safety Association ("NDPSA"), a union for Department peace officers. (*Id.*; *see also* ECF No. 97 at 2.) Plaintiff was president of the NDPSA, though it is not clear from the record whether Odell knew that. (ECF No. 97 at 1.) Odell shared his concerns with another Granite Construction employee, Pam Stepien, who happened to be married to one of Plaintiff's supervisors, Acting Lieutenant Rob Stepien. (ECF No. 85 at 4, 8.) Pam Stepien relayed Odell's concerns to her husband. (*Id.*; ECF No. 97 at 4.)

Lieutenant Stepien, apparently concerned that Plaintiff and Protain were indeed targeting Granite Construction trucks for over-enforcement, asked Protain whether the Teamsters were affiliated with the NDPSA, and Protain said they were not. (ECF No. 85 at 4; ECF No. 97 at 2-3.) Apparently still not satisfied, Stepien asked Plaintiff and Protain's immediate supervisor, Acting Sergeant Scott Weibke, to investigate. (*See* ECF No. 85 at 5; *see also* ECF No. 97 at 3.) Weibke held a meeting with Plaintiff and Protain, and Plaintiff may have confirmed that the Teamsters were not affiliated with the NDPSA. (ECF No. 85

2

at 5-6; *but see* ECF No. 97 at 3 (alleging that Plaintiff did not answer any questions about the political affiliations of the NDPSA).)

Plaintiff and Protain were suspicious that Stepien initiated an investigation for an improper purpose—to protect his wife's employer. (*See* ECF No. 97 at 5.) Plaintiff was especially concerned after reading a draft of a memo by Weibke barring troopers from stopping trucks around jobsites without a supervisor's permission. (*See id.* at 3-4.) Plaintiff believed he was being instructed to refrain from stopping Granite Construction trucks, and Protain shared this belief. (*See id.*)

Plaintiff confronted the Chief of the Department, Tony Almarez, about his suspicions, and Almarez organized a roundtable in response. (ECF No. 97 at 4-5; ECF No. 85 at 7.) Plaintiff attended the roundtable in his capacity as the NDPSA president and asserted that the Department had never received a complaint about over-enforcement from Granite Construction and that Plaintiff had learned this fact from two high-level Granite Construction employees, Rod Cooper and Steve Clark. (ECF No. 85 at 8; ECF No. 97 at 5-6.) Plaintiff made this statement to assess Stepien's reaction and determine whether Stepien was fabricating a complaint or improperly acting at the behest of his wife. (ECF No. 97 at 6.) The attendees of the meeting believed that Plaintiff had called Stepien's credibility into question. (*See* ECF No. 85 at 8.)

Afterwards, one of the roundtable attendees, Major Brian Sanchez, spoke to Cooper and Clark, and both denied having spoken with Plaintiff. (ECF No. 85 at 8; ECF No. 97 at 7.) Sanchez then met with Plaintiff to discuss the inconsistency. (ECF No. 85 at 9.) Plaintiff was "adamant he had spoken with Cooper, and Cooper told him there was no complaint," though Plaintiff apparently abandoned his claim that he had spoken with Clark. (*See id.*)

Sanchez later received voicemail messages that Plaintiff left for Cooper making it clear that Plaintiff never spoke with Cooper. (ECF No. 85 at 9; *see also* ECF No. 97 at 7.) Based on this information, Almarez filed a complaint with the Office of Professional Responsibility ("OPR"). (ECF No. 85 at 9.) OPR initiated an investigation and conducted

3

an interview with Plaintiff. (*Id.* at 10.) In that interview, Plaintiff continued to assert that he spoke with Cooper. (*Id.*)

Plaintiff recanted the next day, informing Sanchez and OPR that he had not spoken with Cooper. (ECF No. 85 at 10-11; *see also* ECF No. 97 at 7.) A pre-disciplinary review panel reviewed OPR's investigation and recommended Plaintiff's termination. (ECF No. 85 at 11.) Plaintiff's termination became effective July 23, 2010. (ECF No. 86 at 46.)

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a dispute is material if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is not appropriate when "reasonable minds could differ as to the import of the evidence." *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is [that which is] enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Decisions granting or denying summary judgment are made in light of the purpose of summary judgment: "to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In evaluating a summary judgment motion, a court views all

4

facts and draws all inferences in the light most favorable to the nonmoving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008). If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." *Anderson*, 477 U.S. at 252.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 85)

A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions:

> First, we consider whether the plaintiff has engaged in protected speech activities, which requires the plaintiff to show that the plaintiff: (1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee. If the plaintiff makes these two showings, we ask whether the plaintiff has further shown that she (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor. If the plaintiff meets her burden on these first three steps, thereby stating a prima facie claim of First Amendment retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech.

*Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). The parties dispute the first, third, fourth, and fifth inquiries.

### A. Protected Speech Activity

Defendants first argue that Plaintiff's statements do not constitute speech on a matter of public concern deserving of First Amendment protection because they are false statements of fact. (ECF No. 85 at 13.) Plaintiff's statements comprised two assertions:

5

Granite Construction never complained to the Department, and Plaintiff learned this from Cooper and Clark. The second assertion is knowingly false. Plaintiff knew that he spoke with a secretary, not Cooper or Clark, but said he spoke to Cooper and Clark anyway. (*See, e.g.*, ECF No. 99-1 at 40-42.) The first assertion is less easily classified. It may have been objectively true that there was no complaint if Plaintiff only intended to refer to formal complaints. On the other hand, if this assertion were false, it is unclear whether Plaintiff made it negligently, recklessly, or intentionally.

Plaintiff's statements regarding the absence of a complaint constitute speech on a matter of public concern because they were designed to expose misconduct. (*See* ECF No. 97 at 13; ECF No. 85 at 21.) Speech designed to expose government misconduct constitutes speech on a matter of public concern, even if recklessly false.[2] *Johnson v. Multnomah Cty., Or.*, 48 F.3d 420, 424 (9th Cir. 1995). Thus, Defendants' argument that Plaintiff's speech deserves no First Amendment protection because it was designed to implicate a superior in misconduct is unavailing. (*See* ECF No. 85 at 14.)

Turning to Plaintiff's knowingly false assertions, Defendants argue that intentionally dishonest statements are per se unprotected by the First Amendment. (ECF No. 85 at 13.) This argument sweeps too broadly. The Ninth Circuit found in *United States v. Alvarez* that false factual speech as a general category receives First Amendment protection. 617 F.3d 1198, 1214 (9th Cir. 2010), *aff'd*, 567 U.S. 709 (2012). While the Ninth Circuit also found that certain subcategories of false factual speech (e.g., defamation) do not receive First Amendment protection (*see id.* at 1206-13), Defendants have not argued that Plaintiff's speech falls within one of those subcategories. (*See generally* ECF Nos. 85; 101.)

Nevertheless, Plaintiff's intentionally false assertions regarding Cooper and Clark do not constitute speech on a matter of public concern because they were immaterial to

///

---

[2] Defendants have not clearly or persuasively argued that Plaintiff's statements regarding the absence of a complaint (as opposed to his statements regarding Cooper and Clark) were intentionally false. (*See* ECF No. 101 at 3-4.)

Plaintiff's ultimate aim—exposing misconduct. (*See* ECF No. 97 at 11.) What mattered was whether Stepien had initiated an investigation in the absence of a complaint, not who had informed Plaintiff there was no complaint, at least according to Plaintiff. (*See id.*) While Plaintiff's intentional falsehood may have bolstered the credibility of his claim that there was no complaint (Cooper and Clark seem to have been sources more authoritative than the secretary with whom Plaintiff actually spoke), Plaintiff's accusation that there was no complaint would have been sufficient on its own to implicate Stepien in misconduct.

Accordingly, the Court finds that Plaintiff's statements regarding the absence of a complaint constitute speech on a matter of public concern while Plaintiff's statements regarding the source of this information do not.

**B.     Substantial or Motivating Factor**

Defendants next argue that Plaintiff's protected activity was not a substantial or motivating factor for his termination because he was terminated for making false statements, not for his association with NDPSA. (ECF No. 85 at 15.) However, a report generated after OPR's investigation indicates that Plaintiff's termination was based on his statements regarding the absence of a complaint in addition to his knowingly false statements regarding the source of this information. (ECF No. 45-3 at 5, 12-13.) Given that Plaintiff's statements regarding the absence of a complaint are protected and made up the material portion of Plaintiff's accusation, and viewing such evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's protected activity constituted a substantial or motivating factor in the Department's decision to terminate Plaintiff.

**C.     Balancing**

The burden now shifts to "the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech." *Karl*, 678 F.3d at 1068.

The Court cannot evaluate the first question at this stage of the litigation because it is unclear whether Plaintiff's statements regarding the absence of a complaint were false,

and if so, whether they were made negligently, recklessly, or intentionally. The strength of Plaintiff's interest in making these statements depends on their nature—true or false—and, if false, his state of mind—negligent, reckless, or intentional. "The First Amendment interest in protecting merely inaccurate statements made in good faith . . . is a good deal stronger" than the interest in protecting inaccurate statements made recklessly. *Johnson*, 48 F.3d at 426 n.5. Thus, a genuine issue of material fact precludes a grant of summary judgment based on weighing Plaintiff's First Amendment rights against the state's legitimate administrative interests.

The second "question relates to, but is distinct from, the plaintiff's burden to show the protected conduct was a substantial or motivating factor. It asks whether the 'adverse employment action was based on protected and unprotected activities,' and if the state 'would have taken the adverse action if the proper reason alone had existed.'" *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009) (quoting *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir.1996)).

Defendants contend that they would have taken the adverse employment action even absent the protected speech. (ECF No. 85 at 21-22.) However, Defendants have not demonstrated that they would have terminated Plaintiff based solely on his intentional dishonesty about the source of his statements. These intentionally false statements, examined in isolation, might have been construed as so inconsequential that termination would have been too severe a sanction. Accordingly, a genuine issue of material fact remains as to whether Plaintiff would have been terminated for his intentionally false statements if those statements had not accompanied his statements regarding the absence of a complaint. For this reason, the Court can neither grant summary judgment nor assess qualified immunity. *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) ("[A] district court should decide the issue of qualified immunity as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.'") (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003).

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 98)

Plaintiff moves for summary judgment on the issue of liability contending that there is nothing for the jury to decide. (ECF No. 98 at 25.) The Court disagrees based on its finding of genuine issues of material fact as discussed above. Accordingly, the Court will deny Plaintiff's motion.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' Motion for Summary Judgment (ECF No. 85) is denied.

It is further ordered that Plaintiff's Motion for Partial Summary Judgment (ECF No. 98) is denied.

DATED THIS 2nd day of March 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE